UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MENACHEM FINEGOLD, as Administrator Ad Prosequendum of the ESTATE OF YECHIEL FINEGOLD,<br><br>*Plaintiff*,<br><br>v.<br><br>GENERAL MOTORS COMPANY, et. al.,<br><br>*Defendants*. | Civil Action No.:<br>3:21-cv-00362-PGS-TJB<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Renewed Motion to Dismiss for Lack of Personal Jurisdiction by Aptiv Services US, LLC's ("Aptiv"). (ECF No. 47). Plaintiff is the administrator of the estate of Yechiel Finegold, who tragically died in a motor vehicle accident. Plaintiff brought this action against General Motors LLC ("GM"), the manufacturer of the 2019 Chevrolet Suburban involved in the accident, and Aptiv, the manufacturer of the sensing and diagnostic module ("SDM") that failed to operate so the airbag in the vehicle did not deploy.[1]

Previously, the Court denied Aptiv's first Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (ECF No. 14) and granted in part

---

[1] The parties previously stipulated to the dismissal of the Complaint against General Motors Company (ECF No. 3), Delphi Corporation, Delphi Automotive PLC, Delphi Technologies, PLC, and Delphi Electronics & Safety. (ECF No. 12).

1

and denied in part Aptiv's Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (ECF No. 15) in a Memorandum and Order dated June 30, 2021. (ECF No. 28). That Memorandum and Order is adopted and incorporated herein. With respect to Aptiv's Rule 12(b)(2) motion, the Court found that the facts before it did "not establish that Aptiv purposefully directed its activities at New Jersey." (*Id.* at 4) (internal quotation marks and citation omitted). However, the Court recognized the challenge in establishing personal jurisdiction over an entity with various subsidiaries and parents, such as Aptiv. (*Id.* at 5). Therefore, it denied the motion without prejudice and allowed the parties to take jurisdictional discovery. (*Id.*) That discovery has since concluded. Aptiv now brings this Renewed Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2). (ECF No. 47).

I.

In an action based on diversity jurisdiction, a federal court first applies the forum state's long-arm statute. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). New Jersey's long-arm statute permits jurisdiction to the "fullest limits of due process." *Id.* (citation omitted). The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction if the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

*Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 167 (3d Cir. 2012) (internal quotation marks, brackets and citation omitted). Here, the action is premised on specific jurisdiction, that is, Aptiv's contacts with New Jersey.

A three-part analysis is applied to determine whether specific jurisdiction over a defendant exists. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

> First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. [*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984)]; *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir.1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 (quoting [*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S. Ct. 154, 160, 90 L. Ed. 95 (1945)]).

*Id.*

Importantly, there must be a "deliberate targeting" of the forum state by the defendant. *Id.*; *see Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018).

3

Once the jurisdictional defense is raised, "[t]he plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citations omitted). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citations omitted). The plaintiff's burden may be satisfied "through sworn affidavits or other competent evidence," however, "bare pleadings alone" are insufficient. *Id.* at 101 n.6 (citation omitted). Once the plaintiff has set forth a prima facie case of the first two requirements, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 97 (internal quotation marks and citation omitted).

## II.

The Court has reviewed the papers submitted in connection with the instant motion to dismiss, including but not limited to, Aptiv's objections and answers to Plaintiff's interrogatories (ECF Nos. 47-5, 47-6) and GM's objections and answers to Plaintiff's interrogatories. (ECF No. 50).

The record before the Court establishes the following:

1. Aptiv is a Delaware limited liability company with its principal place of business in Troy, Michigan. (ECF No. 47-4 at ¶ 3).

2. Aptiv does not have any members in the State of New Jersey. (*Id.*)

3. Aptiv is not licensed, registered, or authorized to do business in the State of New Jersey. (*Id.* at ¶ 9).

4. Aptiv does not have any employees, offices, places of business, bank accounts, real property or assets in the State of New Jersey. (*Id.* at ¶¶ 9-10).

5. Aptiv designs and manufactures original equipment vehicle components for motor vehicle manufacturers that incorporate Aptiv's component parts into the vehicles they manufacture. (*Id.* at ¶ 4).

6. Aptiv, formerly Delphi Automotive Systems, LLC, designed, manufactured and sold SDMs for 2019 Chevrolet Suburban vehicles, including the vehicle involved in the accident, if the SDM was an original. (*Id.* at ¶ 5).

7. The subject SDM was not designed or manufactured in the State of New Jersey. (*Id.* at ¶ 6). Aptiv did not conduct any business related to the subject SDM in New Jersey. (*Id.*)

8. After delivery of its SDMs to a motor vehicle manufacturer or other component part supplier, Aptiv does not control where or when its parts are shipped or where or when those parts are installed in a motor vehicle. (*Id.* at ¶ 7).

9. After delivery of its SDMs to a motor vehicle manufacturer or other component part supplier, Aptiv does not control where any vehicles containing its SDMs are shipped, distributed, sold or resold. (*Id.* at ¶ 8).

10. The SDM in the 2019 Chevrolet Suburban vehicle involved in the accident was installed by GM. (ECF No. 50-2 at 24-25).

11. GM is the only original equipment manufacturer to which Aptiv sold the SDM at issue. (ECF No. 47-5 at ¶ 4).

12. Aptiv designed and manufactured original equipment vehicle components in 2018 and 2019 for GM. (*Id.* at ¶ 13).

13. Aptiv did not sell the subject SDM directly to the aftermarket in the State of New Jersey. (*Id.* at ¶ 8).

14. Aptiv PLC ("PLC") is the "indirect parent" company of Aptiv. (*Id.* at ¶ 1).

15. PLC is a publicly traded company that sells vehicle components to 23 of the 25 largest automotive original equipment manufacturers in the world. (ECF No. 50-2 at 12).

16. In 2019, Aptiv earned approximately $920,000 in revenues from sales made in New Jersey. (*Id.* at Ex. F). None of those sales were for SDMs. (February 15, 2023 Hearing T. 15:1-23).

Plaintiff's arguments in favor of specific jurisdiction over Aptiv are summarized as follows. First, Plaintiff asserts Aptiv purposefully availed itself in

New Jersey because (1) its parent company, PLC, sells components to 23 of the 25 largest OEMs in the world; (2) Aptiv had an active role in the design, development and integration of the SDM that was in the vehicle involved in the accident; and (3) Aptiv derived revenue from sales to GM and sales that took place in New Jersey in 2019. At oral argument, Plaintiff's counsel asserted that Aptiv and GM acted as partners in the SDM's design, development and integration. When questioned on his reliance for this assertion, Plaintiff's counsel admitted that it was not based on discovery, that he was "using it as a term of art," and he was "taking the next leap" in making this conclusion. (Feb. 15, 2023 T. 10:1-25).

      Secondly, Plaintiff asserts the present litigation arose out of or relates to activities that Aptiv directed at New Jersey because Aptiv designed, manufactured, distributed and sold the SDM that was incorporated in the vehicle that was sold, driven and involved in the crash in New Jersey. Finally, Plaintiff asserts that the exercise of jurisdiction over Aptiv comports with notions of "fair play and substantial justice" because (1) Aptiv derives revenue from sales to OEMs that then sell automobiles in New Jersey, (2) New Jersey has a strong interest in litigating products liability disputes between a resident and non-resident and (3) Plaintiff, a New Jersey resident, should not have to travel to another state to adjudicate his claims. As an alternative, Plaintiff claims that the stream of commerce theory warrants the exercise of specific jurisdiction over Aptiv.

Based on the allegations in the Complaint and the facts gleaned from the record, the Court finds that Plaintiff has failed to set forth a prima facie case of personal jurisdiction. Much like before, Plaintiff relies upon Aptiv PLC and GM's contacts with New Jersey to establish specific jurisdiction over Aptiv.[2] However, "contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *O'Connor*, 496 F.3d at 317 (citation omitted). The focus of the inquiry is Aptiv's contacts with New Jersey, not Aptiv's contacts with third parties who targeted New Jersey. Jurisdictional contacts with the forum state by GM and PLC will not be imputed to Aptiv. *See, e.g.*, *Levy v. Jaguar Land Rover N. Am., LLC*, No. CV 19-13497, 2020 WL 563637, at *5 (D.N.J. Feb. 4, 2020) (declining the alter ego theory of personal jurisdiction to impute contacts by a subsidiary to a parent corporation).

Here, the record is insufficient to establish minimum contacts by Aptiv with New Jersey. Aptiv is a Delaware limited liability company with its principal place of business in Troy, Michigan. Aptiv does not have any members, employees, offices, places of business, bank accounts, property or assets in New Jersey. It is not licensed, registered or authorized to do business in New Jersey. Although in

---

[2] The fact that PLC is a publicly traded company that sells its component parts to various OEMs throughout the world does not establish a deliberate targeting of the forum state. "[E]fforts to exploit a national market that necessarily included [the forum state] are insufficient. *Shuker*, 885 F.3d at 780.

8

2019, Aptiv earned revenue from sales in New Jersey, Plaintiff has not shown that the present litigation arose out of or relates to those sales. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 198 L. Ed. 2d 395, 137 S. Ct. 1773, 1780 (2017) (stating that "the suit must arise out of or relate to the defendants contacts with the forum") (internal quotations, citation and brackets omitted).

The stream of commerce theory does not confer specific jurisdiction over Aptiv. Under the stream of commerce theory, "specific personal jurisdiction exists over a non-resident defendant when that defendant 'has injected its goods into the forum state indirectly via the so-called stream of commerce,' rendering it foreseeable that one of the defendant's goods could cause injury in the forum state." *Shuker*, 885 F.3d at 780 (quoting *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 101 (3d Cir. 2009)). A defendant's "minimum contacts must come about by an action of the defendant toward the forum State." *Asahi Metal Indus. Co., Ltd., v. Superior Court of California, Solano County,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). It "cannot be based merely on the defendant's awareness that its product may enter the forum state by some unilateral act of another and/or through the stream of commerce." *Davis v. Quality Carriers, Inc.*, No. CIV.A. 08-4533 (SRC), 2009 WL 1291985, at *6 (D.N.J. May 7, 2009) (citing *Asahi Metal Indus.*, 480 U.S. at 111-12.) Plaintiff's theory is based

on Aptiv's injection of products into the stream of commerce, not activities that Aptiv directed toward New Jersey. As such, the Court rejects the assertion that Aptiv reasonably anticipated that its SDMs would end up in vehicles sold and driven in the State of New Jersey.

### III.

In closing, Plaintiff has not shown that Aptiv purposefully and intentionally directed its activities toward New Jersey such that it reasonably expected to be subject to the Court's jurisdiction based on those activities. The present litigation does not arise out of or relate to activities Aptiv directed at New Jersey. Accordingly, Aptiv's Motion to Dismiss for lack of personal jurisdiction is granted.

### ORDER

**IT IS** on this 6th day of March, 2023,

**ORDERED** that Defendant Aptiv Services US, LLC's Renewed Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) (ECF No. 47) is **GRANTED**.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.